UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CONRAD MIKULEC,

                          Plaintiff,

        v.                                          **DECISION AND ORDER**
                                                    11-CV-342S
TOWN OF CHEEKTOWAGA, TOWN OF
CHEEKTOWAGA POLICE DEPARTMENT,
Officer JOSEPH A. BASHAW,
Officer RONALD WOODS, Officer
SHAWN McADAMAS, Officer ERICK
JAKUBOWICZ, Officer LAURIE UCASZ, and
Officer "JOHN" HAAG,[1]

                          Defendants.

# I. INTRODUCTION

In March of 2010 Conrad Mikulec was arrested after a confrontation with a waitress
at a night club in the Town of Cheektowaga. Mikulec asserts that the officers involved in
this incident—the defendants in this case—lacked probable cause to arrest him, used
excessive force against him, were indifferent to his medical needs, and unnecessarily
prolonged his detention. As such, he brings this action under 42 U.S.C. § 1983, alleging
that the Town of Cheektowaga and several of its police officers violated his constitutional
rights. He also brings a state-law battery claim.

Presently before this Court is Defendants' motion for summary judgment. For the
following reasons, that motion is granted in part and denied in part.

---

[1]Several of the defendants' names were misspelled in Plaintiff's complaint. The correct spellings
are as follows: Ronald Wood, Shawn McAdams, Eric Jakubowicz, and Justin Haag. (Roshia Aff., ¶ 1;
Docket No. 25-1.) Although in her affidavit Attorney Roshia states that "McAdamas" is the correct spelling,
it appears that she inversed the correct and incorrect spellings. Throughout the remainder of her
submissions she refers to him as "McAdams." So will this Court.
        Also, Laurie Ucasz's title is sergeant, not officer. (Id.)

## II. BACKGROUND

### A.    Facts[2]

On the night of March 12, 2010, 74-year-old Conrad Mikulec and his companion, Sylvia Strycharz, were driving home from a dinner event when Mikulec felt "a great degree of discomfort and tightening in his body." (Mikulec Aff., ¶ 6; Docket No. 29-16.) According to Mikulec, hoping to alleviate these symptoms with a glass of water and his daily blood-pressure medication, they stopped at a nearby gentleman's night club, Mademoiselle Folie Berger. (Id., ¶ 7; Def.'s State., ¶ 1; Docket No. 25-4.)   After taking a seat, a waitress eventually approached and Mikulec ordered a water and a "tall glass of orange juice and vodka with no ice" for Strycharz. (Mikulec Aff., ¶ 9.) When the waitress returned, Mikulec took his medication but noticed that Strycharz's drink consisted almost entirely of ice. (Id., ¶ 10.)

From this point, different versions of that night's events begin to emerge, and the facts are largely in dispute. The waitress, Alla Antonova, gave a sworn statement to the police indicating that Mikulec "slapped" the glass at her, and that he then stood up, yelled at her, and took several "threatening" steps towards her. (Def.'s State., ¶ 7.) Mikulec claims he remained seated and that he merely poured the drink on the ground to demonstrate that it was filled only with ice. (Mikulec Aff., ¶ 10.) In any event, the police were eventually called; Officer Bashaw was the first to arrive, followed closely by Officer Wood. (Def.'s

---

[2]This Court has accepted facts in each party's statement of undisputed facts (referred to as "Pl.'s State." and "Def.'s State." respectively) to the extent that they have not been controverted by the opposing party. See L. R. Civ. P. 56(a)(2) (statements not specifically controverted are deemed admitted). Defendants have failed to follow the Local Rule requiring citation to the record substantiating each factual assertion in their statement. See L. R. Civ. P. 56(c)(3). And, because several paragraphs are written in the passive tense, it can be vague and unclear. It will, however, be accepted to the extent that it corresponds to the affidavits, depositions, and other evidence in the record.

State., ¶¶ 11-12.) According to Officer Bashaw, he first spoke to a doorman at Mademoiselle, who relayed to him Antonova's version of the events. Someone at Mademoiselle (it is not clear who) told Wood or Bashaw that if Mikulec would pay for the drink and leave, "everything would be ok." (Def.'s State, ¶ 19.[3]) As the officers tell it, Officer Bashaw then approached Mikulec, who was still "irate" about Strycharz's drink. (Id., ¶ 29.) Officer Wood recalls Mikulec "pointing his finger at Bashaw, making a derogatory remark, and taking an aggressive step toward Officer Bashaw." (Id., ¶ 30.) Officer Bashaw then grabbed Mikulec's arm, informed him he was under arrest, and walked him outside to the front of a patrol car. (Id., ¶¶ 32–35.) Once outside, Bashaw placed Mikulec in double handcuffs (two handcuffs linked together, allowing for more movement) and "it was suggested that he go in [the patrol car] sideways because the back of the [] car is small." (Id., ¶¶ 36, 44.) The officers then drove him to the local police station where he was placed in a jail cell. (Id., ¶ 48.)

Mikulec paints a picture of contrasts. Officer Bashaw did not arrest him inside Mademoiselle; Mikulec voluntarily, and unthreateningly, accompanied the officers outside. (Mikulec Aff., ¶ 13.) The officers did not escort him to the front of a patrol car; once outside, they suddenly grabbed him by the head and the hair and "smashed" his face into the vehicle five or six times. (Id., ¶ 14.) They then handcuffed him and continued to slam his head into the car. (Id.) Next, the officers did not simply suggest that he get in sideways; they dragged him to another patrol car, where they threw him in with such force that he hit his head on the opposite side of the car. (Id., ¶ 15.) Nor were the handcuffs loosely

---

[3]Defendants do not include an affidavit from the doorman. Nor do they indicate who told them that "everything would be ok." It is included here for informational purposes only.

fastened; they were so tight that his left wrist began to bleed. (Id.) Finally, Mikulec asserts that he repeatedly informed the officers that he was disabled and requested medical attention. (Id., ¶¶ 18,19.) His entreaties, however, were ignored.

Mikulec was eventually charged with harassment and disorderly conduct. The case resulted in an "adjournment in contemplation of dismissal." See N.Y. Crim. P. Law § 170.55. And the action was ultimately dismissed in accordance with § 170.55.

## B.    Procedural History

Originally filed in state court, Defendants removed this action on April 21, 2011. (Docket No. 1.) Defendants filed an answer the next day. With leave of this Court, Mikulec filed an amended complaint on September 23, 2011. (Docket No. 13.) Defendants filed an amended answer the following month on October 14, 2011. (Docket No. 14.) After discovery, Defendants filed this motion for summary judgment on August 13, 2012. Briefing concluded on October 1, 2012, at which time this Court took the motion under consideration.

## III. DISCUSSION

## A.    Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact." A fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

In deciding a motion for summary judgment, the evidence and the inferences drawn

from the evidence must be "viewed in the light most favorable to the party opposing the motion." Addickes v. S.H. Kress and Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996).

## B.     Plaintiff's Claims and Defendants' Motion

Mikulec argues that Officers Bashaw and Wood used excessive force in his arrest. In conjunction with this allegation, he also brings a state-law battery claim. He also argues that Officers Jakubowicz and McAdams, who arrived on the scene later, witnessed the use of excessive force and failed to intervene. Further, arguing that the officers lacked probable cause for his arrest, he brings a false-arrest claim, and also asserts that his unlawful detention violated his due process rights. He further claims that he was unlawfully denied medical treatment. Last, he brings claims against the Town of Cheektowaga for negligent hiring, training, and supervision.

The federal claims are brought under 42 U.S.C. § 1983. Civil liability is imposed under § 1983 only upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws. On its own, § 1983 does not provide a source of substantive rights, but rather, a method for vindicating federal rights conferred elsewhere in the federal statutes and Constitution. See Graham

v. Connor, 490 U.S. 386, 393-94,109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 145 n.3, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979)).

Each claim is discussed below.

**1.      Excessive Force**

Mikulec alleges that Defendants Wood and Bashaw used excessive force in making the arrest. He further argues that Defendants Jakubowicz and McAdams were present at the scene, witnessed the excessive force, and failed to intervene on his behalf.

These claims find their origin in the Fourth Amendment, which is applicable to the States by way of the Fourteenth Amendment. Minnesota v. Dickerson, 508 U.S. 366, 372, 113 S.Ct. 2130, 2135, 124 L.Ed.2d 334 (1993). The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." U.S. Const. amend. IV. Fourth Amendment excessive force claims are analyzed under a standard of objective reasonableness. Graham, 490 U.S. at 394.  This requires the court to "'balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" Tennessee v. Garner, 471 U.S. 1, 8, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1984) (quoting United States v. Place, 462 U.S. 696, 703, 103 S. Ct. 2637, 2642, 77 L. Ed. 2d 110 (1983)).

Although an officer is justified in using force when a person whom he is trying to arrest resists, threatens, or assaults the officer, "the force used by the officer must be reasonably related to the nature of the resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." Sullivan v. Gagnier, 225 F.3d 161, 165-66 (2d Cir. 2000),

6

Moreover, police officers "have an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in their presence by other officers." O'Neill v. Krzeminski, 839 F.2d 9, 11 (2d Cir.1988). "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know . . . that excessive force is being used." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) (internal citations omitted).

Here, mindful that the evidence must be considered in the light most favorable to Plaintiff, a reasonable jury could conclude that Defendants Wood and Bashaw used excessive force in arresting Mikulec. Indeed, the accounts of the altercation between the officers and Mikulec differ substantially, raising disputed issues of material fact. For example, Mikulec, 74-years-old at the time, asserts that he did not resist arrest, and that the officers, without provocation of any kind, slammed his head into the hood of a patrol car. Such an aggressive act in light of the circumstances can hardly be deemed reasonable. See, e.g., Graham, 490 U.S. at 397. Although Defendants reject this account of the arrest, "credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir.1997). If credited, Mikulec's version of the events would support a jury's finding in his favor. Accordingly, the excessive-force claim withstands summary judgment.[4] For the same reasons, Mikulec's

---

[4]Freedom from the use of excessive force is a clearly established right and was so at all times relevant to this case. See Cook v. Sheldon, 41 F.3d 73, 77, 79 (2d Cir.1994); Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991). If Plaintiff establishes that the Defendants violated his constitutional right to be free from excessive force, Defendants are not entitled to qualified immunity. Given the unresolved issues of material fact, this Court cannot conclude that it was objectively reasonable for Defendants to believe that their conduct did not violate Plaintiff's rights. Defendants are therefore not entitled to the protections of qualified immunity on this claim at this time.

state-law battery claim, which requires only a showing of intentional "offensive" bodily contact, see Zgraggen v. Wilsey, 200 A.D.2d 818, 819, 606 N.Y.S.2d 444 (3rd Dep't 1994), also survives.

The claim against Officers McAdams and Jakubowicz, however, suffers a different fate. To establish liability on the part of a defendant under a failure-to-intervene theory, a plaintiff must show that the defendant (1) possessed actual knowledge that a fellow officer was using excessive force; (2) had a realistic opportunity to intervene and prevent the harm from occurring; and (3) nonetheless disregarded that risk by intentionally refusing or failing to take reasonable measures to end the use of excessive force. Kornegay v. New York, 677 F. Supp. 2d 653, 658 (W.D.N.Y. 2010). Officers Wood and Bashaw admit that they made the arrest. The remaining officers, however, assert that the were not involved in the arrest and that they did not witness it. Mikulec, in fact, admits that the only evidence tending to prove this claim is that Officers Jakubowicz and McAdams were present at the scene. (See Pl.'s Br. in Opp., at 15–16; Docket No. 29.) This is insufficient evidence from a which a jury could conclude that these officers (1) saw the alleged abuse and (2) had an opportunity to intervene. See Rodriguez v. City of New York, No. 10 CIV. 9570 PKC KNF, 2012 WL 1658303, at *5 (S.D.N.Y. May 11, 2012) ("[T]he mere fact that [an] [o]fficer was present for the entire incident does not, on its own, establish that he had either awareness of excessive force being used or an opportunity to prevent it.").

Officer McAdams testified that he was only at Mademoiselle for "a minute or two," and that he never left his patrol car. (McAdams Dep., at 14; Docket No. 25-2.) According to his deposition testimony, he was then quickly called to another incident. (Id. at 15–16.) To be sure, this testimony is not unassailable. Officer Jakubowicz claims to have seen

Officers Bashaw and McAdams talking to Mikulec inside of Mademoiselle. (Jakubowicz Dep., at 17–18; Docket No. 25-2.) The reliability of McAdams testimony therefore becomes suspect. But, even if the jury were to discredit McAdams' testimony, the jury would still be required to make the untenable leap from the conclusion that McAdams was, at one point, talking to Mikulec, to the conclusion that he saw the abuse occurring and had an opportunity to intercede. Without any evidence whatsoever indicating that he had such an opportunity, this inference is unreasonable and the claim must therefore be dismissed.

The same is true for Officer Jakubowicz. He testified that he was only at the scene for six minutes and, while he did see Officer Bashaw place Mikulec in handcuffs, he did not see the alleged abuse. (Jakubowicz Dep., at 25–32.) Mikulec offers no evidence to the contrary. Thus, like Officer McAdams, Officer Jakubowicz's mere presence is not enough to establish that he witnessed the alleged abuse or had an opportunity to stop it. See Rodriguez, 2012 WL 1658303, at *5.

### 2. Denial of Medical Treatment

A pre-trial detainee's constitutional right to be free from cruel and unusual punishment in the form of inadequate medical care derives from the Due Process Clause of the Fourteenth Amendment, not the Eighth Amendment, which is the source of the same right for convicted prisoners. Thomas v. Nassau County Corr. Ctr., 288 F. Supp. 2d 333, 337 (E.D.N.Y. 2003). Eighth Amendment analysis, however, applies to both claims. See Weyant v. Okst, 101 F.3d 845, 856 (2d Cir. 1996).

The Eighth Amendment, which applies to the States through the Fourteenth Amendment, "prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." Wilson v. Seiter, 501 U.S. 294, 297, 111 S. Ct. 2321, 2323, 115 L. Ed. 2d 271

(1991); U.S. Const. amend. VIII. As such, prison conditions and the treatment prisoners receive while incarcerated are subject to scrutiny under the Eighth Amendment. See DeShaney v. Winnebago County Dept. of Soc. Servs., 489 U.S. 189, 199–200, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989). In addition, the Supreme Court has recognized that a prisoner's claim that he was intentionally denied medical treatment is cognizable under the Eighth Amendment and § 1983:

> We therefore conclude that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend evolving standards of decency in violation of the Eighth Amendment.

Estelle v. Gamble, 429 U.S. 97, 104, 106, 97 S. Ct. 285, 50 L. Ed. 2d 25 (1976) (quotations and citations omitted).

"A claim of cruel and unusual punishment in violation of the Eighth Amendment has two components—one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000) (citing Hudson v. McMillian, 503 U.S. 1, 7–8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992); Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999)). With respect to a claim of deliberate indifference to a serious medical need, a prisoner must show that he suffered from a "sufficiently serious" medical condition, see Chance v. Armstrong, 143 F.3d 698,

702 (2d Cir. 1998), and that the defendants acted with a "sufficiently culpable state of mind," Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).

The subjective component "requires a showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct." Sims, 230 F.3d at 21 (citations omitted). While the objective component is "contextual and responsive to contemporary standards of decency," Id. (quoting Hudson, 503 U.S. at 8), it "contemplates a condition of urgency, one that may produce death, degeneration, or extreme pain," Johnson v. Wright, 412 F.3d 398, 403 (2d Cir. 2005) (internal citation and quotations marks omitted).

Here, there is no evidence that Mikulec suffered from a serious medical condition, thus eliminating any need to address the subjective component of the claim. After his arrest, Mikulec complained that his handcuffs were too tight and that he needed to take his blood-pressure medication. He was allegedly ignored.

But Mikulec's claim that he needed to take his medication is belied by his own affidavit, in which he states, "The waitress subsequently brought me the water and I took my medication." (Mikulec Aff., ¶ 10.) Further, aside from a "a great degree of discomfort," Mikulec can point to no other repercussions arising from Defendants' alleged refusal to allow him to take his medications. This cannot give rise to a constitutional violation.

Regarding the excessively tight handcuffs, Mikulec submits pictures depicting abrasions on his wrists and contends that his complaints about wrist pain were ignored both while in the patrol car and at the station house. Mikulec sought treatment for these injuries at a hospital relatively soon after the incident. But this too is insufficient. Although

especially tight handcuffs may help establish an excessive force claim, see, e.,g., Lucky v. City of New York, No. 03 CIV.1983(DLC), 2004 WL 2088557, at *7 (S.D.N.Y. Sept. 20, 2004), it cannot be said that Mikulec's resulting injuries—some bleeding and abrasions—could have produced "death, degeneration, or extreme pain." See Johnson, 412 F.3d at 403; see also Evering v. Rielly, No. 98 CIV. 6718, 2001 WL 1150318, at * 9 (S.D.N.Y. Sept. 28, 2001) ("Unlike the excessive force standard, deliberate indifference requires injuries that demonstrate urgency leading to death, degeneration or extreme pain."). As such, Mikulec's claim of deliberate indifference must fail. See Ford v. Phillips, No. 05 CIV. 6646 (NRB), 2007 WL 946703, at *12 (S.D.N.Y. Mar. 27, 2007) ("Abrasions, a minor bruise, slight bleeding and scratches are not injuries that may produce death, degeneration or extreme pain, and no reasonable jury could find to the contrary"); Johnson v. Brown, No. 9:09-CV-0002 GTS/DEP, 2010 WL 6243352, at *15 (N.D.N.Y. Sept. 3, 2010) (injuries of a transitory nature are insufficiently serious).

### 3. False Arrest

A claim for false arrest requires proof that: (1) the defendant intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to confinement; and (4) the confinement was not otherwise privileged. Posr v. Doherty, 944 F.2d 91, 96 (2d Cir.1991). Probable cause is considered a complete defense to a false-arrest claim. Jenkins v. City of New York, 478 F.3d 76, 84 (2d Cir. 2007).

Mikulec was charged with disorderly conduct and harassment in the second degree,

both "violations" under New York State law. <u>See</u> N.Y. Penal Law §§ 240.20 & 240.26.[5]

According to Defendants, the disorderly conduct charge arose out of Mikulec's behavior

with the police; and the harassment charge arose out of Mikulec's behavior with the

waitress. The officers claim that they had probable cause to arrest Mikulec on these

charges because Officer Bashaw "witnessed the [disorderly conduct] violation first hand"

and he interviewed the waitress, who told the officers that Mikulec slapped a drink at her.

(Defs.' Br. in Supp. of Sum. J., at 13–14; Docket No. 25-3.)

    As an initial matter, the disorderly conduct charge cannot serve a legitimate basis

for arrest at this time. The events surrounding Mikulec's interaction with the officers are in

_____

[5]Under New York law:

> A person is guilty of disorderly conduct when, with intent to cause public
> inconvenience, annoyance or alarm, or recklessly creating a risk thereof:
> 1. He engages in fighting or in violent, tumultuous or threatening
> behavior; or
> 2. He makes unreasonable noise; or
> 3. In a public place, he uses abusive or obscene language, or makes an
> obscene gesture; or
> 4. Without lawful authority, he disturbs any lawful assembly or meeting of
> persons; or
> 5. He obstructs vehicular or pedestrian traffic; or
> 6. He congregates with other persons in a public place and refuses to
> comply with a lawful order of the police to disperse; or
> 7. He creates a hazardous or physically offensive condition by any act
> which serves no legitimate purpose.

N.Y. Penal Law § 240.20

> A person is guilty of harassment in the second degree when, with intent
> to harass, annoy or alarm another person:
> 1. He or she strikes, shoves, kicks or otherwise subjects such other
> person to physical contact, or attempts or threatens to do the same; or
>
> 2. He or she follows a person in or about a public place or places; or
> 3. He or she engages in a course of conduct or repeatedly commits acts
> which alarm or seriously annoy such other person and which serve no
> legitimate purpose.

N.Y. Penal Law § 240.26

much dispute and require factual findings. If the jury credits the officers' version of the events, Mikulec's claim must fail. But if it finds that Mikulec did not act disorderly, the claim is valid.

Yet this does not end the inquiry. If the officers were justified in arresting Mikulec for harassment, summary judgment in their favor is warranted. Mikulec argues the officers lacked probable cause because they did not witness the encounter, and further, the waitress's story—that Mikulec threw or slapped a drink at her—is contradicted by a description of the incident on the 911 call, which tends to corroborate Mikulec's version of the events.[6]

An officer has probable cause to make an arrest when he has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004). Here, there is no indication that the officers heard the 911 call. And, in any event, they are entitled to rely on the waitress's story—even in the face of denials from Mikulec and his companion—that Mikulec slapped a drink at her. See Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir.1997) (holding that arresting officer was entitled to rely on version of altercation given by fellow officer, despite plaintiff's protestations of innocence); Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001) (probable cause may exist "where a police officer was presented with different stories from an alleged victim and the arrestee"). Aside from a predictable denial from Mikulec, there was no reason to question the

---

[6] The caller, an employee at Mademoiselle, has not been identified.

waitress's veracity. The officers therefore had probable cause to make the arrest.

That the arrest was made based on behavior outside of the officer's presence potentially raises different questions, however. Second-degree harassment is only a violation under New York's penal law, and if not committed in the officer's presence, a custodial arrest on this charge contravenes New York State Criminal Procedure Law § 140.10. This law permits an officer to make an arrest for a violation only if he has reasonable cause to believe that such a person has committed an offense *"in his or her presence."* See, e.g., People v. Solomon, 31 A.D.3d 1178, 1179, 817 N.Y.S.2d 819 (4th Dep't 2006) ("The warrantless arrest of defendant for a violation, *i.e.*, harassment, that did not occur in the presence of the arresting officers was [] illegal."). But several courts have correctly found this law inapplicable in the context of a § 1983 false-arrest claim. See Hotaling v. LaPlante, 167 F.Supp.2d 517, 522-23 (N.D.N.Y. 2001); Ramos v. City of New York, No. 05-CV-3155, 2006 U.S. Dist. LEXIS 73518, at *19-20 (S.D.N.Y. Oct. 6, 2006); Williams v. Schultz, No. 9:06-CV-1104, 2008 WL 4635383 (N.D.N.Y. Oct. 16, 2008) (Lowe, M.J., adopted by Hurd, J.); Picciano v. McLoughlin, 723 F. Supp. 2d 491, 504 (N.D.N.Y. 2010). These courts reason that a violation of state law does not, *ipso facto*, offend federal law; the Constitution, in other words, is not concerned with the restrictions that New York chooses to place on its police officers. This conclusion finds support in the Second Circuit and the Supreme Court. See Virginia v. Moore, 553 U.S. 164, 176, 128 S. Ct. 1598, 1607, 170 L. Ed. 2d 559 (2008) ("[W]hile States are free to regulate [] arrests however they desire, state restrictions do not alter the Fourth Amendment's protections"); Jaegly v. Couch, 439 F.3d 149 (2d Cir. 2006) (dismissing a § 1983 false-arrest claim founded on a

harassment charge by concluding, without any mention of New York Criminal Procedure Law § 140.10, that the arrest was based on probable cause).

Like those district courts, this Court has found that the officers here did have probable cause to make the arrest.

But unlike those courts, this Court is not convinced that the analysis should necessarily end there. Despite the accepted rule that probable cause is a complete defense to a false-arrest claim, the Supreme Court has intimated, just as § 140.10 ordains for state-law purposes, that an arrest might be considered unreasonable under the Fourth Amendment if the officer was not present when an alleged minor offense occurred. See Atwater v. City of Lago Vista, 532 U.S. 318, 340, n.11, 121 S. Ct. 1536, 49 L. Ed. 2d 549 (2001); see also Moore, 553 U.S. at 171 (in a "long line of cases" the Court has found probable cause a sufficient predicate for custodial arrest so long as the crime was committed in the officer's presence). Indeed, the Supreme Court in Atwater—deciding that the Fourth Amendment does not prohibit an officer from making a custodial arrest for a misdemeanor violation—scrupulously and consistently reminded its readers that the criminal offense at issue was committed in the officer's presence. The word "presence," for example, appears 22 times in the majority opinion. Further, the Court noted that an assessment of the common law at the time the nation's founding is the first step in determining what the Framers deemed reasonable. Id. at 326–327. And the "ususal rule" at common law was that "a police officer could arrest without warrant one guilty of a misdemeanor *if committed in his presence*." Id. at 329 (emphasis added) (citing Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925)). Although the Court ultimately refused to "speculate whether the Fourth Amendment entails an 'in the presence'

16

requirement for purposes of misdemeanor arrests," see id. at 340 n. 11, the implication is clear: this factor should not be summarily disregarded.[7]

Here, compared to Atwater, there is more reason to question the reasonableness of Mikulec's arrest because (1) the offense was committed outside of the officer's presence and (2) Mikulec was charged with only a "violation," not a misdemeanor. C.f., id. at 323.[8] The Atwater Court suggests that the Fourth Amendment may have something to say about this set of facts.

But whether or not it does is a question that must wait for another day. In the end, the discussion above demonstrates that the law on this issue is far from established (and if it is, it is certainly settled in Defendants' favor). As such, the officers are protected by the doctrine of qualified immunity, which provides that an officer cannot be held liable under § 1983 if his actions did not violate clearly established law. See Warren v. Keane, 196 F.3d 330, 332 (2d Cir. 1999). Because it is at best uncertain whether Mikulec's arrest violated the Fourth Amendment, qualified immunity precludes his false-arrest claim. It is therefore dismissed.

### 4. "Due Process" Claim

Mikulec argues that his detention at the Cheektowaga police station for over two hours, without being informed of the charges against him, violated his procedural due

---

[7]Before Atwater, several appellate courts have considered this issue and found that the Fourth Amendment does not contain an "in-the-presence" requirement. These courts have not since revisited the issue. See Woods v. City of Chicago, 234 F.3d 979, 992–95 (7th Cir. 2000); Pyles v. Raisor, 60 F.3d 1211, 1215 (6th Cir.1995); Fields v. City of South Houston, 922 F.2d 1183, 1189 (5th Cir.1991); Barry v. Fowler, 902 F.2d 770, 772 (9th Cir. 1990).

[8]Although categorized as a misdemeanor, the offense in Atwater (driving without a seatbelt) was punishable only by a fine.

process rights. The claim, couched vaguely under the Due Process Clause, is without merit.

First, the Sixth Amendment guarantees the accused the right to "be informed of the nature and cause of the accusation." U.S. Const. amend VI. And although "[t]he Second Circuit does not appear to have definitively ruled on the issue of when the right to be informed of charges adheres, several district courts in this Circuit [,including in this District,] have held that an arresting officer need not inform an arrestee of the charges against him." Martin v. County of Nassau, 692 F. Supp. 2d 282, 294 (E.D.N.Y. 2010); see also Sheikh v. N.Y. Police Dep't, Nos. 03–cv–6326 (NGG), 05–cv–4718 (NGG), 2008 WL 5146645, at *10 n. 11 (E.D.N.Y. Dec. 5, 2008); Ochoa v. City of West Haven, No. 08–cv–0024 (WWE), 2008 WL 4426960, at *3 (D. Conn. Sept. 26, 2008); Ippolito v. Morency, No. 02 CV 6645T, 2005 WL 2136921, at *5 (W.D.N.Y. Sept. 2, 2005) (Telesca, J.); Rivera v. Granucci, No. Civ. N–87–480 (JAC), 1993 WL 76202, at *6 (D. Conn. Mar. 12, 1993).

Several appellate courts agree, finding that the defendant's right to be informed of the nature and cause of an accusation brought against him does not exist until the government has committed to prosecution. See Burchett v. Kiefer, 310 F.3d 937, 946 (6th Cir. 2002); Rudd v. Graves, 22 Fed. App'x 954, 956 (10th Cir. 2001); Jones v. City of Jackson, 203 F.3d 875, 880 (5th Cir. 2000); Coulson v. Washoe County, 69 F.3d 543 (9th Cir. 1995); Kladis v. Brezek, 823 F.2d 1014, 1018 (7th Cir. 1987). Thus, in accordance with the overwhelming weight of authority, this Court finds that right to be informed of the "nature and cause of the accusation" does not attach until the government commits to prosecution. Here, there is no dispute that Mikulec was eventually informed of the charges against him. That the officers did not so inform him immediately after his arrest does not

offend the Constitution. <u>See</u> <u>Martin</u>, 692 F. Supp. 2d at 294.

Second, prolonged post-arrest detention implicates the Fourth Amendment. <u>See</u> <u>Russo v. City of Bridgeport</u>, 479 F.3d 196, 209 (2d Cir. 2007); <u>Bryant v. City of New York</u>, 404 F.3d 128 (2d Cir. 2005) (in considering allegations of prolonged post-arrest detention, "we turn to Fourth Amendment principles"). Here, Mikulec's Fourth Amendment rights were not violated. A jurisdiction that releases the accused or "provides judicial determinations of probable cause within 48 hours of arrest will, as a general matter, comply with the promptness requirement of <u>Gerstein [v. Pugh</u>, 420 U.S. 103,, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975)]." <u>County of Riverside v. McLaughlin</u>, 500 U.S. 44, 56, 111 S.Ct. 1661, 114 L. Ed. 2d 49 (1991). Accordingly, a delay of less than 48 hours is  presumptively valid.

Mikulec appears to argue that the time he spent in the jail cell was unreasonable because the officers told him that they "were trying to decide what to charge [him] with." (Mikulec Aff., ¶ 20.) But first it must be noted that a roughly two-hour delay does not begin to approach the 48-hour rule articulated in <u>McLaughlin</u>.  And second, Mikulec's complaint is not among the impermissible reasons for a delay outlined by that Court. <u>See</u> <u>id.</u> at 58 ("Examples of unreasonable delay are delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or delay for delay's sake."). Rather, the contemplation of charges is among a police officer's administrative duties that, like fingerprinting and booking, justifies brief detention. <u>See</u> <u>Gerstein</u>, 420 U.S at 113–114 ("[A] policeman's on-the-scene assessment of probable cause provides legal justification for arresting a person suspected of crime, and for a brief period of detention to take the administrative steps incident to arrest"); <u>Vondrak v. City of Las Cruces</u>, No. CIV.05-0172 JB/LFG, 2009 WL 1300946., at *5 (D.N.M. Mar. 26, 2009)

(two-hour delay reasonable for police to conduct administrative tasks). To be clear, a roughly 2-hour detention is not *per se* reasonable, but without evidence tending to show that officers detained him for longer than necessary, the presumption of validity applies and Mikulec's claim must be dismissed. See Portis v. City of Chicago, 613 F.3d 702, 703–04 (7th Cir. 2010) ("A delay of 48 hours or less is presumed reasonable, and the arrested person bears the burden of establishing that the length of his custody is nonetheless unreasonable.").

### 5. Municipal Liability: Town of Cheektowaga[9]

A municipality may be held liable for damages under 42 U.S.C.A. § 1983 only when execution of government policy or custom inflicts the injury in question. Monell v. Dep't of Soc. Servs of City of New York, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978). A municipality cannot be held liable on the theory of respondeat superior or simply because it employs a tort feasor. Id. The plaintiff must set forth facts showing the existence of the offending policy or custom. Id. In other words, the municipality must be the moving force behind the injury alleged. Board of County Com'rs Bryan County, Okl. v. Brown, 520 U.S. 397, 117 S. Ct. 1382, 137 L. Ed. 2d 626 (1997). Mere allegations are insufficient. Id.

But mere allegations are all Mikulec can offer. He has not presented any evidence of a municipal policy or custom that caused his injuries, and Mikulec offers no evidence supporting his claim that the Town failed to train its officers adequately. Rather, he simply recites the alleged misconduct and concludes that it is "clearly indicative of a unwritten

---

[9]The police department, as an administrative arm of the Town, cannot be sued. See, e.g., Hall v. City of White Plains, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002). The Town of Cheektowaga Police Department is therefore dismissed.

policy or custom." (Pl.'s Br. in Resp., at 11; Docket No. 29.) This is simply insufficient. <u>See,</u> <u>e.g.</u>, <u>Jones v. Town of E. Haven</u>, 691 F.3d 72, 81 (2d Cir. 2012) ("Isolated acts of excessive force by non-policymaking municipal employees are generally not sufficient to demonstrate a municipal custom, policy, or usage that would justify municipal liability."). As such, summary judgment on Mikulec's § 1983 claim is warranted for the Town of Cheektowaga.

## IV.  CONCLUSION

For the foregoing reasons, this Court finds that Defendants are entitled to summary judgment in their favor for all causes of action except Mikulec's battery and excessive force claims against Officers Wood and Bashaw.[10]

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendants' Motion for Summary Judgment (Docket No. 25) is GRANTED in part and DENIED in part.

FURTHER, all Defendants but the Town of Cheektowaga, Officer Joseph Bashaw, and Officer Ronald Woods shall be terminated from this case.

SO ORDERED.


Dated: November 12, 2012
       Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        Chief Judge
                                        United States District Court

---

[10]It is not clear whether Mikulec seeks to hold the Town of Cheektowaga vicariously liable regarding his state-law battery claim. Neither party briefed this issue. The Town will therefore not be dismissed entirely at this time.